## The Galena and Chicago Union Railroad Company, Appellant, v. Frederick Jacobs, who sues by his next friend, Appellee.

### APPEAL FROM COOK.

An instruction, unless it be upon an abstract proposition of law, must have some evidence for its foundation, and must spring out naturally from such evidence.

The Circuit Court is not limited to the instructions asked for, but may supply by its own suggestions any omission of counsel.

A permission to employees of a railroad company to occupy land within the inclosure of the road of the company, is a permission to special persons, not to be extended to those not in this relation to the company.

Instructions may be modified, but error may be assigned on the refusal of the court to give them as asked for.

A party should cross a railroad track at the usual crossing. The track is the exclusive property of the company, on which an unauthorized person cannot go except at his own hazard, unless it be under certain qualifications.

To maintain an action for negligence, there must be fault on the part of the defendant, and no want of ordinary care on the part of the plaintiff.

In proportion to the negligence of one party should be measured the degree of care required of the other. Where there are faults on both sides, the plaintiff may recover; his fault is to be measured by the negligence of the defendant, and the plaintiff need not be wholly without fault. The relative degrees of negligence of the parties may be measured and considered.

This was an action on the case for the use of Frederick Jacobs, for injuries sustained by being run over by a locomotive owned by the appellant. The damages were laid at $15,000. There was a trial, and a verdict and judgment for $2,000, from which the defendant below appealed.

The first count in the declaration avers that the plaintiff in the court below, was being in and passing along a certain public and common way, which was crossed by the railroad track of the appellant, upon which a locomotive and tender was running; and that by the carelessness of the servants of the appellant, the appellee was run over and injured.

The second count is like the first, but avers that the appellant did not ring a bell or blow a whistle, and that appellee was run over and injured, and lost his arm.

The third count avers that appellee was upon the railroad track of appellant, and was run over by a locomotive, etc.

The fourth count avers the injury to have happened to appellee while he was standing on the railroad of appellant, near to and by a certain public road or street, where the said road was crossed by the railroad on the same level, and that appellant had not caused any sign or board to be placed across the highway, giving warning, and did not ring a bell or blow a whistle, etc.

There is no averment in the declaration that the appellee was himself without fault.

To this declaration there was filed the general issue, and three special pleas.

The second plea avers that the appellant was running its locomotive, etc., along its road, as it lawfully might do, in pursuit of its ordinary business, and that the appellee negligently, carelessly, and improperly remained in and upon the railroad track of appellant without its consent, and without being seen, and that if he was injured, it was caused by his own fault in remaining upon the railroad track, and not by any default of the appellant or its servants.

The third plea avers that appellee went upon and carelessly, negligently, etc., remained on the railroad track of the appellant, and if injured, it was by accident, and without any default on the part of the appellant, but by and through the want of due care on the part of the appellee.

The fourth plea, after averring that appellee was on the railroad of appellant, etc., says if he sustained any injury, it was in part caused by, and resulted from the said carelessness and fault of the appellee, and not by the sole default and negligence of the appellant.

There was an answer to each of these pleas, denying them, and an issue to the country. The appellant filed a motion for a new trial, which was overruled; and an appeal was then prayed and allowed.

The bill of exceptions states, among other, the following proofs.

The plaintiff introduced as a witness, *Mrs. Kell*, who testified as follows:

I know the plaintiff. At the time of the accident in May, 1856, I was living on the Geneva road inside the railroad fence. There were five shanties there. I lived in the fifth one, that is the one farthest west. I lived with my husband; he was at work at the depot for the railroad company. Irish families lived in the other shanties. Dempsy lived in the second house towards the cattle guard. The other men living in those shanties worked for the company. Those families had children then. At the time of the accident I was acquainted with Mr. Jacob's family. I had been at their house two days before the accident. I had taken the little boys to my house twice before the accident, once two days before, and once about a week before. They were the same children who were run over; their names were Frederick and William.

The counsel for the plaintiff here put the question, "how did people living inside the railroad inclosure get backwards and forwards?" To which the defendant's counsel then and there

objected, but the court overruled the objection and admitted the evidence.

Answer. Along the track. It was rather difficult walking there. They walked on the timbers when they crossed the cattle guard.

Cross-examined. These children never went on the track there alone. They had been to my house twice; I went with them. Mr. and Mrs. Jacobs both knew that the children went to my house. I have two children, the oldest about twelve, and the other about eight. I don't allow them to go on the railroad track. I keep watch of them to see that they do not go on the track. I don't think it safe to allow them to go on the track. Mr. Jacobs did not object to my taking his children to my house. He insisted on my coming back with them. I did come back with them. There is only one fence between my house and Jacob's; there is one fence around Mr. Jacob's house, and one about the railroad. The children, to get to my house, had to get through or over these fences. When the people went from these shanties to the junction, they always went along the railroad. When I first went for the children, I did not climb over the railroad fence, but went along the track. When I took the children home, I went along the track. I never took the children over the fence. I took the children along the railroad. I did not take them through the guard. I do not go over any fence. I went to the nearest point on the railroad and then went along it, part of the time on the track, and part of the time at the side of it. The tallest boy walked over the cattle guard, and I carried the smallest one all of the way.

The defendant admitted that the plaintiff was four and a half years of age when the accident happened.

The plaintiff's counsel admitted that there was no pretense that the injury complained of was willful or intentional.

The defendant then introduced as a witness, *Charles Watson*, who testified as follows:

I live at the Junction. At the time of the accident to the plaintiff, Mr. Jacobs lived in my house. I am well acquainted with the premises. The Galena & Chicago Union Railroad Company own the land inside of the railroad fence, and also that outside up to the highway which is open. I own the land next north of this open place. That is my barn north from the cattle guard. The people who live inside of the railroad fence, used to annoy me, by pulling down my fence and coming through there with teams to get to their shanties, and I opened a place at the corner next to the railroad fence, for them to pass through. The cattle guard is not the same now as it was then; then they were laid with the corners or edges of the joists up. Some of

the people nailed slats across the guard to walk over on. People usually passed that way. The cattle guard was made with two by four joists or scantling laid cornerwise, that is, with the edges up. At the time the accident happened, that way around was open. I had opened that space for the people living in the shanties to use with teams. It was the only way for them to go with teams to the shanties. There were eight or ten trains a day passed that place. There were about thirty-five or forty arrived and departed from the Junction daily.

Those people living in the shanties inside of the railroad, when on foot, went through the cattle guard. It was the usual way for them to go.

The plaintiff, by his attorney, requested the court to instruct the jury as follows:

"The plaintiff was not a trespasser, if he was on the land of the defendant, by the permission of the defendant either express or implied."

Which instruction the court refused to give as asked, but added to it, and gave the instruction as follows:

"The plaintiff was not a trespasser if he was on the land of the defendant by the permission of the defendant, either express or implied—*and it is for the jury to determine, from the evidence, whether such permission was expressly given, or can be implied from the circumstances and facts in proof.*"

The plaintiff, by his attorney, then asked the court to instruct the jury as follows; which instructions were given by the court as asked for:

2nd. "If the jury shall find, from the evidence, that at the time of the accident, by the permission of the defendant, persons were living within the inclosure of the track near where the accident occurred, and were permitted by the defendant to come and go over the same, and that at the time of the accident, the plaintiff was, by the express or implied permission of the defendant, at the place where the injury occurred, then it was the duty of the defendant to use due care and diligence in running their trains over the place in question.

3rd. "If the jury shall find, from the evidence, that the plaintiff was lawfully in the place where the injury occurred, either by the express or implied permission of the defendant, and that the injury was solely the result of the negligence of the defendant, without any negligence on the part of the plaintiff or his parents, then the plaintiff is entitled to a verdict."

The defendant requested the court to instruct the jury as follows:

1st. "A party seeking to recover damages for a loss which he alleges has been caused by the negligence or misconduct of another, must show to the jury that his own negligence or

misconduct has not in any way contributed in producing the injury complained of.

2nd. " The burthen of proof is on the plaintiff, to show not only that the defendant was guilty of negligence, but that the plaintiff exercised proper care and circumspection in his own conduct ; and if he was of insufficient age to exercise care and circumspection, then he must show that those who were bound to take care of him, did not by their negligence suffer the plaintiff to expose himself to the injury.

3rd. " If the jury shall believe, from the evidence, that the plaintiff was of such tender years as would be likely to make him inconsiderate or imprudent, and that he therefore required the control and oversight of his parents ; then they should find that his parents were exercising such care and prudence over the plaintiff as judicious and careful parents ought to have done, at the time the injury was received, or the law is with the defendant, and the plaintiff cannot recover."

All of which instructions were given by the court; as asked for by the defendant. The fourth instruction asked for by the defendant, was as follows :

4th. " If the jury believe, from the evidence, that the plaintiff or his parents knew that there was a railroad at the place where the injury occurred, upon which locomotives and cars were frequently running, and that if the plaintiff wandered thereon that he would be exposed to injury and danger, then plaintiff was on the railroad of defendant at his own peril, and the plaintiff and his parents were guilty of such negligence as should prevent a recovery in this case."

Which fourth instruction the court refused to give as asked for by the defendant, but gave it altered and modified as follows :

" If the jury believe, from the evidence, that the plaintiff or his parents knew that there was a railroad at the place where the injury occurred, upon which locomotives and cars were frequently running, and that if the plaintiff wandered thereon, that he would be exposed to injury and danger, *and that notwithstanding the plaintiff was permitted negligently to wander thereon*, then plaintiff was on the railroad of defendant at his own peril, and the plaintiff and his parents were guilty of such neglect as should prevent a recovery in this case."

To which refusal of the court to give said fourth instruction as asked for, and to which alterations and qualifications of said fourth instruction, the defendant excepted.

The defendant then asked the court to instruct the jury as follows :

5th. " Under the issue raised by the pleadings in this case, if the jury believe, from the evidence, that the plaintiff was guilty of

any negligence on his part by going upon and remaining upon the railroad track of the defendant, at the time when the accident complained of happened, then the law is with the defendant, and the plaintiff cannot recover.

6th. "If the jury believe, from the evidence, that both plaintiff and defendant were in fault, then the defendant cannot recover.

7th. "The plaintiff must show that he was without fault, by going and being upon the railroad track at the time the injury happened, or he cannot recover; although it may appear that the defendant was also guilty of negligence."

Which instructions were given by the court as asked. The defendant asked the court to instruct the jury as follows:

8th. "If the jury believe, from the evidence, that the defendant has exercised ordinary care in fencing the railroad, and in running trains thereon, then the law is with the defendant, and the plaintiff ought not to recover."

Which said instruction the court refused to give, to which refusal the defendant excepted.

The defendant requested the court to instruct the jury as follows:

9th. "If the jury believe, from the evidence, that the land where the injury occurred was owned by the defendant, and was in the use of the defendant, the plaintiff was a trespasser thereon, and if he was on said grounds without permission of the defendant, and not for any necessary purpose, he was there in his own wrong and at his own risk, and the law is for the defendant, and the plaintiff cannot recover, unless the jury believe, from the evidence, that the defendant willfully injured the plaintiff."

Which said ninth instruction the court refused to give as asked for, but having altered and qualified it, gave it to the jury as follows:

"If the jury believe, from the evidence, that the land where the injury occurred, was owned by the defendant, and was in the use of the defendant, the plaintiff was a trespasser thereon, *unless there by the express or implied permission of the defendant*, and if he was on said grounds without permission of defendant, and not for any necessary purpose, he was there in his own wrong and at his own risk, and the law is for the defendant, and the plaintiff cannot recover, unless the jury believe, from the evidence, that the defendant *was guilty of gross* negligence, and willfully injured the plaintiff."

To which refusal to give said ninth instruction as asked for, and to which alterations and qualifications of said instruction, the defendant excepted. The defendant then requested the court to instruct the jury as follows:

10th. "That the defendant was not required by the statutes of this State to ring a bell to warn persons against danger upon its own premises; that such a warning is designed for persons upon and at road crossings, and unless defendant was injured at a road crossing, the omission to ring a bell, unless it was a willful omission, does not in such case show that the defendant was negligent.

11th. "If the jury believe, from the evidence, that the plaintiff was injured on the premises of the defendant, and not at a road crossing, then the omission to ring a bell or blow a whistle is not *prima facie* evidence of negligence on the part of the defendant.

12th. "If the jury believe, from the evidence, that the plaintiff had not sufficient discretion or knowledge to have the care of himself, and was suffered to wander on the premises of the defendant, by the negligence or want of care of his parents, he was there in his own wrong and at his own risk, and the law is for the defendant, unless the jury believe that the defendant willfully caused the injury complained of."

Which said tenth, eleventh and twelfth instructions were given as asked for.

13th. "If the evidence in this case shows that the injury complained of happened on the ground or right of way used and occupied by the defendant, and that the plaintiff had no right to be where he was, then the defendant was not answerable for the injury unless it was done willfully, because the defendant in the use of the road is not bound to keep a look out on its own ground, as against those having no lawful right on the road, but may use the same for its own purposes in its own way, and any person going upon the track without permission (*express or implied*) at such place is there at his own peril and in his own wrong, and therefore if he is injured he cannot recover, because his own neglect or carelessness has contributed thereto."

Which said thirteenth instruction the court refused to give as asked for, but altered and qualified it by inserting the words *express or implied*, between the words *permission* and *at* in the concluding sentence. To which refusal to give said thirteenth instruction as asked for, and to which alteration and qualification of said thirteenth instruction, the defendant excepted.

The defendant then requested the court to instruct the jury as follows:

14th. "Persons not in privity with a railroad company, wishing to cross its track, are bound to cross at a public crossing, or take the consequences of any accident which may happen in consequence of any collision with the cars, not occasioned by the willful and reckless act of the servants of the defendant."

Which said fourteenth instruction was given as asked for.

There was a finding for the plaintiff, and damages were assessed at two thousand dollars.

The errors assigned are—

1st. The court below gave improper instructions to the jury on the part of the plaintiff.

2nd. The court below refused to give proper instructions, as asked, on the part of the defendant, in that court.

3rd. The court below improperly altered the instructions asked for on the part of the defendant below.

4th. The court below gave instructions on the part of the plaintiff below, which were calculated to mislead, and did mislead the jury.

5th. The court below admitted improper evidence on the part of the plaintiff.

6th. The court below improperly overruled the motion for a new trial, and gave judgment for the plaintiff in that court.

E. PECK, for Appellant.

GOODRICH & FARWELL, for Appellee.

BREESE, J. Without recapitulating the facts of this case as they appear on the record, we will consider the instructions upon them as given and refused by the court below.

It is a case of negligence against a railroad company, the plaintiff being, at the time of the injury, but four and a half years of age.

The first instruction asked by the plaintiff below, was clearly objectionable, as it makes no reference to the evidence ; as modified by the court it does, but in other respects is not essentially different, but still remains objectionable.

We hold in all cases, an instruction, unless it be upon an abstract proposition of law, which the court may grant or refuse at its discretion, must have some evidence on which to base it, and spring out naturally from such evidence. *Coughlin* v. *The People*, 18 Ill. R. 266 ; *Ewing* v. *Runkle*, 20 Ill. R. 448.

In scanning the testimony in this case, after a critical and searching examination, we find no one witness deposing to one single fact or circumstance, giving any color to a permission to the plaintiff to be on the land of the defendant for any purpose whatever. There are no facts or circumstances sworn to from which such an inference can be rationally deduced, but, if we understand them, quite the contrary. All the instructions on behalf of the plaintiff are put by the court, on the ground of this express or implied permission on the part of the defendant to

the plaintiff to be on their land, which was in their hourly and constant use, and as the case turns upon this, it requires a careful examination.

The evidence shows that Jacobs lived outside of the railroad grounds, at some considerable distance from the point where the injury took place, and to reach which point the plaintiff would have to climb over or creep through three fences. Other persons, Irish, with their families, employees of the company, lived in shanties inside of the railroad inclosure—as many as five families—the head of one of them, Mrs. Kell, sworn for plaintiff, says she lived in the fifth shanty, that is, the one farthest west; Irish families lived in the other shanties; Dempsy lived in the second towards the cattle guard; those families had children there; was acquainted with Mr. Dempsy's family; had been at their house two days before the accident; had taken the little boys to her house twice before the accident, once two days before and once about a week before—the same children that were run over; their names are Frederick and William; showed them at her house something to make music, an instrument for children to play on. To this question of the plaintiff, " how did people living inside of the railroad inclosure get backwards and forwards," she answers, "along the track; it was rather difficult walking there, they walked on the timber when they crossed the cattle guard."

On her cross-examination she says, these children never went on the track there alone; they had been to her house twice; she went with them; the parents both knew that the children went to her house; has two children herself, the oldest about twelve and the other about eight; don't allow them to go on the railroad track; keeps watch of them to see they do not; don't think it safe to allow them; Mr. Jacobs (the father) did not object to her taking his children to her house; he insisted that she should come back with them, and she did come back with them.

Among the mass of testimony in the case, this is all that has the slightest allusion or most remote reference to the fact that this child, the plaintiff, was ever on the railroad track at any time before he met with the injury, and how, from this, it can be inferred that the company or their agent knew it, and knowing it and not forbidding it, they therefore permitted it, when unattended, we cannot discover. It seems to us, as he was never on the track before without a prudent and cautious woman for his protector, both going and returning, the inference would be directly the other way; that a permission can only be implied that he might be there with a competent protector, not by himself. There does not seem to be anything on which to base the theory of implied permission. It surely cannot be drawn

from the two occasions spoken of by Mrs. Kell, for the legitimate inference from them, and it should so have been put to the jury, is, that the child having never been on the track without a competent attendant, could not rightfully be upon it unattended.

But the court told the jury that they might infer a permission by the company to be on their track, from facts which establish its opposite; for going on the track with a careful and watchful attendant is the opposite, when done by a child not five years of age, of going there unattended.

This testimony shows too, that the father of the child, before he would permit him to go with Mrs. Kell, insisted that she should return with him, which she did.

These instructions, placing the case upon an implied permission of the defendant, in the absence of any evidence on which to base it, were erroneous. They must have controlled the finding of the jury, or contributed largely to it, for the idea of an implied permission being excluded, it is not probable such a verdict would have been rendered.

A court does not sit to see injustice done, or to permit it, nor is it restricted, in communicating with the jury, to the instructions asked on either side. It is the province of the court—their undisputed realm, in which to exert to the fullest extent this power—to impart instructions as to the law of the case, on the facts as the jury may find them to exist, and for that purpose, supply, by its own suggestions, any omission or want of observation of the counsel.

The plaintiff can derive no support or advantage from the fact that the employees of the railroad, with their families and children residing within the inclosure, were permitted by the company free ingress, egress and regress in and upon their track and land. This was a permission to special persons, for the benefit and necessities of the road, and cannot be extended to those not in this relation to the company.

Jacobs and his family lived outside of the railroad inclosure, and some distance from the switch and the cattle guard, and the cabins or shanties where Mrs. Kell lived. He was not an employee of the company, but was a baker and kept a grocery, and could claim no such privilege for himself or children as the company awarded to their employees. Did he or any of his family have occasion to visit these shanties, it would have been his and their duty to go the way open and free to the public, and not use the track at any other place than at the usual crossing, and then only for the purpose of crossing. The railroad track is the exclusive property of the company, on which no unauthorized person has a right to be for any pur-

pose; if there, it is at his own peril, under certain qualifications, which we will consider as we proceed.

As to the instructions asked by the defendant, some of which were modified and then given, we can only say that we have always considered the court was at liberty to modify an instruction, for the error could be assigned on refusing to give it as originally proposed. What we have said as to the plaintiff's instructions apply to the fourth and thirteenth of defendant's instructions, as modified, and in their modified form are objectionable.

As this case will be remanded and a new trial had, it becomes necessary for the court to submit some considerations on the question of negligence, and the principles which should govern it.

The question has been considered at great length, by this court, heretofore, in the following cases: *The Aurora Branch Railroad Co.* v. *Grimes*, 13 Ill. R. 585; in which the court say: " The degree of care which the plaintiff is bound to exercise, will be found to depend upon the relative rights or position of the parties in relation to the rights exercised, or position enjoyed by the plaintiff at the time the injury complained of happened. As growing out of these relative positions of right, two classes of cases will be found.

Where both parties are equally in the position of right, which they hold independent of the favor of each other, the plaintiff is only bound to show that the injury was produced by the negligence of the defendant, and that he exercised ordinary care and diligence in endeavoring to avoid it, or that by the exercise of ordinary care he could not have avoided it." The court cite and approve the principle of the case of *Butterfield* v. *Forrester*, 11 East R. 60, as expressed by Lord ELLENBOROUGH: " Two things must concur to support this action, an obstruction in the road by the fault of the defendant, and no want of ordinary care on the part of the plaintiff."

In the case of *Dyer*, impleaded, etc., v. *Talcott*, 16 Ill. R. 300, the court refer to this rule in Grimes' case, as maintaining " that the burthen of proof is on the plaintiff, to show that he exercised due care and caution, or that his own negligence did not contribute to produce the injury complained of, as well as that the injury was produced by the negligence of the defendant."

In the case of the *Chicago & Mississippi Railroad Co.* v. *Patchin*, ib. 198, the court say, " Railroads may and ought to be liable for malicious mischief or willful injuries; nor should the scrutiny be too critical in cases of convictions for that gross negligence which indicates the absence of the lowest degree of care and attention. Railroads may not omit all care, prudence or skill, and ground themselves upon an immunity from all

responsibility because they are lawfully pursuing their own business upon their own land. They are ever under the strictest duty of care, and liable for slight neglect, while there are passengers or freights to be endangered by experiments in running on stock. Yet even without this, they may not with impunity, wantonly or willfully, nor with such total or gross negligence as evidences willfulness, run upon and injure persons or stock trespassing upon the road.

In the *Galena and Chicago Union Railroad Co.* v. *Fay*, ib. 559, the court say, page 570: "It is enough in law to constitute a defense, that the negligence or carelessness (of plaintiff) caused or contributed to the injury complained of."

In the *Great Western Railroad Company* v. *Thompson*, 17 Ill. R. 131, the court reconsider and approve the decision in Patchin's case.

In the *Central Military Tract Railroad Co.* v. *Rockafellow*, ib. 541, the court again refer approvingly to Patchin's case, and say, "The evidence clearly fails to show gross negligence in plaintiff (railroad company) in killing the ox, and the jury was erroneously instructed as to the degree of diligence required, and the degree of negligence for which they would be liable for damage done to property circumstanced as the ox was in this case. The degrees of care or diligence are three, and are well defined and illustrated in Story & Jones on Bailments. Negligence is similarly divided, and made or defined to be the counterparts or opposites of each degree. There is little difficulty in laying down the rule for care and for neglect, while we are content to state in the language long known, familiar to, and used by the courts and profession. The difficulty is very little greater in determining what degree of each is applicable to any given state of facts. · The great difficulty is the application of the rule to determine whether the particular facts show the want of the ascertained degree of care, or guiltiness of the negligence applicable to the relation of the parties under the circumstances."

In the case of the *Illinois Central Railroad Co.* v. *Reedy*, ib. 580, the court, at page 582, refers with approbation to Patchin's case, and further say, "The conduct of the servant must evince a total want of care for the safety of the stock, whereby it is injured, in order to make the company liable for his negligence. In other words, a case of very gross negligence must be shown." "The burden of proof is on the plaintiff, and it is for him to show by facts and circumstances, and by those acquainted with the management of trains, that it was practicable and easy to have avoided the collision, and that in not doing so, those in charge of the train were guilty of the measure of carelessness

or willful misconduct which the law requires to establish the liability of the defendant below. The defendant's train was rightfully on the track, and could go nowhere else; the plaintiff's steer was there wrongfully. He was wrongfully allowed to be in the most dangerous place which could be found, and where there was every reason to suppose he would be killed."

In the case of the *City of Chicago* v. *Major*, 18 Ill., at page 361, the court say, "In this, as in all other cases, it must be left to the jury to determine whether the parents of the child have been guilty of negligence, in suffering the child to be in the streets; on this point the court justly instructed the jury in the last instruction. The jury were there told that they must believe, from the evidence, that the defendant was guilty of negligence which produced the injury in not keeping the tank in repair, and also that its parents were not guilty of negligence; and in another part of the charge they were told that the burden of proof rested on the plaintiff to show not only negligence on the part of the city, but also, that the parents were not negligent."

The rulings of other courts, British and American, do not essentially differ from these, as will be perceived by reference to them as cited by the court.

In addition to the cases cited, reference may with propriety be made to 2nd Chipman Vt. R. 128; 2 Pickering R. 621; 12 ib. 177; 6 Cowen R. 189; 4 Mass. R. 422; 2 Taunton R. 314; all proceeding on the ground not only that the defendant was guilty of negligence, but that the plaintiff exercised ordinary care, and throwing the *onus* in each aspect upon the plaintiff. In 2 Taunton, it is held, " if the *proximate* cause of damage be the plaintiff's unskillfulness, although the *primary* cause be the misfeasance of the defendant, the plaintiff cannot recover."

The earliest case we have cared to find, in which this priciple was declared, is that of *Blyth* v. *Topham*, Croke's James, 158, and is as follows: " Action upon the case:—for that he digg'd a pit in such a common, by occasion whereof, his mare being straying there, fell into the said pit and perished. The defendant pleaded not guilty, and found for him. And now the plaintiff, to save costs, moved in arrest of judgment upon the verdict that the declaration was not good, for when the mare was straying, and he shows not any right why his mare should be in the said common, the digging of the pit is lawful as against him; and although his mare fell therein, he had not any remedy, for it is *damnum absque injuria*, wherefore an action lies not by him; and of that opinion was the whole court. Wherefore it was adjudged upon the declaration that the bill should abate; and not upon the verdict."

This, and all the cases subsequent to which we have referred,

have one common basis, and that is found in the old law maxim that, " no man shall take advantage of his own wrong or negligence" in his prosecution or defense against another. *Sheppard* v. *Hees*, 12 Johns. R. 434; *Bush* v. *Brainerd*, 1 Cowen R. 78. All the cases upon this subject, proceed on this maxim. The leading case of *Butterfield* v. *Forrester*, 11 East R. 60, is of that character, in which Lord ELLENBOROUGH gives the rule referred to by this court in Grimes' case. To state it more at length than is there to be found, the following presents it in substance. A party repairing his house, had put a pole across the road adjacent to the building, leaving a free passage on the other side. The plaintiff set out from an inn not far distant from the pole about candlelighting, and while the obstruction could be seen for one hundred yards. He, however, riding violently, did not observe it, but rode against it, fell with his horse, and was injured. BAILEY, J., directed the jury, that if a person riding with reasonable and ordinary care, could have seen and avoided the obstruction, and if they were satisfied the plaintiff was riding along the street extremely hard and without ordinary care, they should find a verdict for the defendant; which they accordingly did. On a motion for a new trial, Lord ELLENBOROUGH, C. J., said: " A party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right. In cases of persons riding upon what is considered the wrong side of the road, that would not authorize another purposely to ride up against them. One person being in fault, will not dispense with another using ordinary care for himself. Two things must concur to support this action; an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff. Rule refused."

So in the case of *Pluckwell* v. *Wilson*, 5 Carr. & Payne R. 375, which was for an injury to the plaintiff's chaise by a carriage of the defendant, driven by his servant, the court left it to the jury to say, whether the injury to the plaintiff's chaise was occasioned by negligence on the part of the defendant's servant, without *any* negligence on the part of the plaintiff himself, for that if the plaintiff's negligence in any way concurred in producing the injury, the defendant would be entitled to a verdict; and so, if it was altogether an accident.

In the case of *Woolf* v. *Beard*, 8 ib. 435, which was an action on the case for the negligent driving of a cab by the defendant's servant, the court said: " If the plaintiff has contributed to the accident by her own neglect, she cannot recover in this action. No one has a right of action if he meets with an accident which

by ordinary care he might have avoided. If the plaintiff took reasonable and proper care, and it was on account of the extraordinary speed of the cab—nine or ten miles an hour—that she could not save herself, and thus met with the accident, she is entitled to your verdict; but if she, by her own negligence or want of care, contributed to the accident, she cannot recover, even though you should think the driver of the cab was driving too fast, and was therefore guilty of negligence. as well as the plaintiff." It was argued in this case, that the accident happened by the plaintiff's own want of caution in stepping off the curb stone when a cab was coming up, and that the man who drove it was not at all to blame.

In *Sills* v. *Brown*, 9 ib. 245, the question was, whether the plaintiff, by his negligence or improper conduct, *substantially* contributed to the occurrence of the injury of which he complains; not to the amount of it, but to its *occurrence*. Therefore where a brig was carrying her anchor in a position contrary to the by-laws of the river Thames, at the time she came in collision with a barge, it was held that the improper carrying of the anchor would not of itself be sufficient to make the owner of the brig responsible in damages, if the barge, by departing from the known rule of the river, brought herself into the situation in which the brig struck her, although but for the position of the anchor the collision would not have produced the injury complained of. The court say emphatically, the position of the anchor will not be sufficient to make the defendant liable, if the plaintiff, by his servants, substantially contributed to the *occurrence* of the injury; *not to its amount*, but to *the occurrence of it*.

In *Raisin* v. *Mitchell*, ib. 252, which was for negligence in running defendant's brig against the plaintiff's sloop, at anchor in the river Thames, the damages claimed were five hundred pounds. TINDAL, C. J., in summing up, said, " The question is, whether the plaintiff has made out a case to entitle him to damages. You must be satisfied that the injury was occasioned by the want of care or the improper conduct of the defendant, and was not imputable in any degree to any want of care or any improper conduct on the part of the plaintiff." The jury found for the plaintiff, damages two hundred and fifty pounds.

TINDAL, C. J., asked the jury how they made up their verdict. The foreman answered that there were faults on both sides. C. J. " Then you have considered the whole matter ?" The foreman answered in the affirmative.

The counsel for defendant submitted to his lordship, that the fact which the foreman of the jury had stated, entitled the defendant to the verdict. C. J. "No; there may be faults to a certain extent." Counsel requested a note might be made of

the objection. The Chief Justice assented, and the verdict was entered by the associate, for two hundred and fifty pounds.

The reporter says in a note : " The verdict in this case, as well as the opinion of the learned Chief Justice, seem to be quite correct, and sustainable in point of law, according to the most modern authorities," and refers to several cases, among them, *Bridge* v. *The Grand Junction Railway Co*. 3 Meeson & Welsby, 244. This was an action on the case for the negligent management of a train of railway carriages, in which PARKE, Baron, said, " The question is, whether the plea is not altogether bad in substance. It is consistent with all the facts stated in it, that the plaintiff, or they under whose guidance he was, was guilty of negligence, and the defendant also ; and yet that the plaintiff is entitled to recover. All the facts alleged in it may be true ; there may have been negligence in both parties, and yet the plaintiff may be entitled to recover. The rule of law is laid down with perfect clearness in the case of *Butterfield* v. *Forrester*, and that rule is, that although there may have been negligence on the part of the plaintiff, yet, unless he might by the exercise of ordinary care have avoided the consequences of the defendant's negligence, he is entitled to recover. If by ordinary care he might have avoided them, he is the author of his own wrong. That is the only way in which the rule, as to the exercise of ordinary care, is applicable to questions of this kind."

In *Marriott* v. *Stanley*, 1 Scott R. (New Cases) 392, it was held that in an action to recover compensation in damages for an injury occasioned by an obstruction of the highway, it was not a misdirection on the part of the judge to leave it to the jury to say, " whether or not the plaintiff was himself in any degree *the cause of the injury ;* whether *he* had acted with such a want of reasonable and ordinary *care* as to *disentitle* him to recover ? " In this case, *Smith* v. *Pelah*, 2 Strange R. 1263, is cited. This was that case : The chief justice ruled, that if a dog once bit a man, and the owner having notice thereof, keeps the dog, and lets him go about or lie at his door, an action will lie against him at the suit of a person who is bit, though it happened by such person treading on the dog's toes, for it was owing to his not hanging the dog on the first notice ; and the safety of the king's subjects ought not afterwards to be endangered.

So, in *Bird* v. *Holbrook*, 15 Eng. C. L. R. 91, where the defendant, for the protection of his property, some of which had been stolen, set a spring gun, without notice, in a walled garden at a distance from his house ; the plaintiff, who climbed the wall

in pursuit of a stray fowl, having been shot, it was held that the defendant was liable in damages.

In *Davies* v. *Man*, 10 Meeson & Welsby, 545, the general rule of law in respect to negligence was held to be, that although there may have been negligence on the part of the plaintiff, yet, unless he might, by the exercise of ordinary care, have avoided the consequence of the defendant's negligence, he is entitled to recover. Therefore, where the defendant negligently drove his horses and wagon against and killed an ass which had been left in the highway, fettered in the fore feet, and thus unable to get out of the way of the defendant's wagon, which was going at a smartish pace along the road down a slight descent, the driver of the wagon being some little distance behind the horses, PARKE, Baron, said, " that the jury were properly directed, that the mere fact of negligence on the part of the plaintiff in leaving his donkey on the public highway, was no answer to the action, unless the donkey's being there was the immediate cause of the injury ; and that if they were of opinion that it was caused by the fault of the defendant's servant in driving too fast, or, which is the same thing, at a smartish pace, the mere fact of putting the ass on the road would not bar the plaintiff of his action. All that is perfectly correct; for, although the ass may have been wrongfully there, still the defendant was bound to go along the road at such a pace as would be likely to prevent mischief. Were this not so, a man might justify the driving over goods left on a public highway, or even over a man lying asleep there, or the purposely running against a carriage going on the wrong side of the road."

In *Lynch* v. *Nurdin*, 41 Eng. C. L. R. 422, where the defendant negligently left his cart and horse unattended in a thronged street, the plaintiff, a child seven years old, got upon the cart in play ; another child incautiously led the horse on, and the plaintiff was thereby thrown down and hurt. The court, Lord DENMAN, C. J., held, that the defendant was liable in an action on the case, though the plaintiff was a trespasser and contributed to the mischief by his own act; that though he was a co-operating cause of his own misfortune by doing an unlawful act, he is not deprived of his remedy. And that it was properly left to the jury, whether defendant's conduct was negligent and the injury caused by the negligence.

The learned judge, in his elaborate comments on the case, concludes by saying, " his, the child's, misconduct bears no proportion to that of the defendant, which produced it."

The cases referred to above are principally cases decided by the English courts, some of them going considerable length be-

yond those of our own courts. We will refer to a few of those cases in which the difference is apparent.

In *Simpson et al.* v. *Hand et al.*, 6 Wheaton R. 311, GIBSON, C. J., says, " It is an undoubted rule, that for a loss from mutual negligence, neither party can recover in a court of law ; and so general is it, that it was applied, in *Hill* v. *Warne*, 14 Eng. C. L. R. 391, to the negligence of agents respectively appointed by the parties to superintend the taking down of a party wall."

In *Rathbun and West* v. *Payne et al.*, 19 Wend. R. 399, BRONSON, J., says, " When both parties are equally in the wrong, neither can maintain an action against the other. Indeed, it has been said, that a plaintiff suing for negligence must be *wholly* without fault."

In *Barnes* v. *Cole and Fitzhugh*, 21 ib., the same judge says, " The verdict was also, I think, plainly against the weight of evidence. I do not see how the plaintiff could escape the charge of having, *to some extent*, contributed to bring the misfortune on himself, by leaving his boat in an improper situation."

In *Hartfield* v. *Roper and Newell*, ib. 615, where a child two years of age was permitted by its parents to be in a public highway without any one to guard him, and was there run over by a person traveling in a sleigh, and injured, it was held, that neither trespass or case would lie against the traveler, in the absence of proof that the injury was voluntary, or arose from culpable negligence on his part. In an action for such injury, if there is negligence on the part of the plaintiff, there cannot be a recovery ; and although a child, by reason of his tender age, is incapable of using that ordinary care which is required of a discreet and prudent person, the want of such care on the part of the parents or guardians of the child furnishes the same answer to an action by the child, as would its omission on the part of an adult plaintiff. To allow small children to resort to a common highway alone, is a criminal neglect ; and although that confers no right upon travelers to commit a *voluntary injury* upon either, neither does it warrant gross neglect ; and to make them liable for anything short of that, would be contrary to law. COWEN, J., further says, " The child has a right to the road for the purposes of travel, attended by a proper escort. But at the tender age of two or three years, or even more, the infant cannot personally exercise that degree of discretion which becomes instinctive at an advanced age, and for which the law must make him responsible, through others, if the doctrine of mutual care between the parties using the road is to be enforced at all in his case. An infant is not *sui juris*. He belongs to another, to whom discretion in the care of his person is exclusively confided. That person is keeper and agent for this purpose ; and in respect

to third persons, his act must be deemed that of the infant; his neglect, the infant's neglect. It is a mistake to suppose that, because the party injured is incapable of personal discretion, he is therefore above all law."

" It therefore seems to me," he says, " that here was a good defense established at the trial, on the ground that the defendant being free from gross neglect, and the plaintiff being guilty of great neglect on his part,—indeed, being unnecessarily, not to say illegally, occupying the road, having no right there,—for he does not appear to be traveling, nor even on the land which belonged to his family,—the injury was a consequence of his own neglect, at least such neglect as the law must impute to him through others."

This case was questioned on the argument by the counsel for the appellee in no mild terms, and it may be, as he insisted, that it carries the law to the extreme verge, but it has been referred to by this court in two cases— *Grimes'* case, 13 Ill. R. 585, and *Patchin's* case, 16 ib. 202—certainly not with marked disapprobation. In the last case the court refer to it as opposed to the principle declared in *Lynch* v. *Nurdin,* and it has received the sanction of the highest New York courts, as will be seen by reference to *Brownell* v. *Flagler,* 5 Hill R. 282, *Brown* v. *Maxwell,* 6 ib. 592, and *Munger* v. *Tonawanda R. R. Co.,* 4 Comstock R. 359.

We do not question the correctness of many of the legal principles affirmed by it, but as authority in this case it is not admitted, since the decision in *Major's* case, 18 Ill. R. 361, and as not in conformity with the principles we affirm in this case.

. It will be seen, from these cases, that the question of liability does not depend absolutely on the absence of all negligence on the part of the plaintiff, but upon the relative degree of care or want of care, as manifested by both parties, for all care or negligence is at best but relative, the absence of the highest possible degree of care showing the presence of some negligence, slight as it may be. The true doctrine, therefore, we think is, that in proportion to the negligence of the defendant, should be measured the degree of care required of the plaintiff— that is to say, the more gross the negligence manifested by the defendant, the less degree of care will be required of the plaintiff to enable him to recover. Although these cases do not distinctly avow this doctrine in terms, there is a vein of it very perceptible, running through very many of them, as, where there are faults on both sides, the plaintiff shall recover, his fault being to be measured by the defendant's negligence, the plaintiff need not be wholly without fault, as in *Raisin* v. *Mitchell* and *Lynch* v. *Nurdin.*

We say then, that in this, as in all like cases, the degrees of negligence must be measured and considered; and wherever it shall appear that the plaintiff's negligence is comparatively slight, and that of the defendant gross, he shall not be deprived of his action.

The judgment of the Circuit Court is reversed, the cause remanded and a *venire facias de novo* awarded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*