Bell, J.
During tlie month, of August, 1905, the Denver & Pueblo .Construction Co., under contract with the city and *407 county of Denver, defendant in error herein, was engaged in grading and curbing a number of streets in said city, including South Tenth street. The work, during this month, consisted in plowing the streets to a depth of from six to twenty inches and smoothing the surface thereof with bladed machines, after the excess earth was removed, so as to establish proper grades and foundations for a finished surface of three inches of disintegrated granite. The plowing and grading left the earth soft in some places, but put'the streets in a passable condition for travel, although certain holes or depressions of from two to four inches deep were produced therein, by reason of traffic and a subsidence of'the soft earth. The work of plowing, grading and curbing South Tenth street, between West Tenth and West Eleventh avenues, was completed some time about the middle of August, 1905, and was left in the condition as above described because of the inability of the contractor to obtain the necessary finishing material. During the course of the work the contractor maintained a watchman and red lights throughout the district in which it was operating, which included South Tenth street above mentioned. The contractor suspended operations and withdrew from said district on or about the 15th day of December, 1905, for lack of necessary finishing material and on account of the frozen condition of the ground. During the course of the operation the work was in charge of Mr. George M. Post, an assistant engineer of the Board of Public Works of said city, for defendant in error, Mr. Thomas J. Tully, vice president of the Denver & Pueblo Construction Co., for the contractor, and Mr. J. J. Noonan, sub-contractor. Mr. Post, representing the city, and Mr. Tully, representing the contractor, were in the district every day during the course of the operation, and went over the street in question herein about' December 15th, 1905, after the work thereon had been suspended, and’ testified that it was *408 then in a reasonably safe state of repair for travel. Ahont 11:30 p. m. of December 30th, 1905, Fred W. Koch, plaintiff in error herein, while riding to his home on a bicycle at the rate of three miles an hour, fell therefrom at a point about 100 -feet north of West Tenth avenue and near the center of said South Tenth street, between West Tenth-and West Eleventh avenues, and sustained a painful injury.to his arm, from which he was still suffering at the time of the trial of this case. In his amended complaint he alleges that, at the time of the accident he was using due care and caution, and that the accident occurred by reason of the negligence of the defendant in error in knowingly permitting a hole-or excavation to be or remain in said street, and whol^ and negligently failing to place any light or lights there to show where said hole or excavation -was located, and, by reason of said negligence on the part of the defendant in error, he suffered damages in a large sum. The defendant in error, in its answer, denies thabit negligently or knowingly permitted any defect in said Tenth street, or was guilty of negligence in any manner, and alleges that if the plaintiff in error did meet with or suffer any such injury, the same was caused wholly through his own fault and negligence, and was not the result of any fault or negligence on the part of said defendant in error. A replication was filed denying the allegations contained in the second defense. The case was tried to a jury in the district court, and resulted in a verdict for defendant in error, upon which judgment was rendered, and is now before us on a writ of error. The evidence shows that the plaintiff in error resided at 903 South Tenth street in said city, within one block of the alleged hole or excavation; that he passed the place of accident every day and every night in going to and from his saloon, located on California street; that he was familiar with the condition of the street and knew of a depression therein about three feet east of the 'one com *409 plained of, but did not know of the one into which he rode, which is the alleged cause of the accident, until he encountered it that night; that, some time in October, 1905, about two months previous to the accident, he informed Mr. Hunter, city engineer and member of the Board of Public Works of said city, of the general bad condition of the street, and suggested that he, Hunter, should have the contractor make the necessary repairs. Harry M. Clapp, the only witness for the plaintiff in error, stated that he could not testify as to any particular hole, or to any particular part of the block, nor could he describe.any specific defect therein. When asked if there were any holes in West Tenth street near West Tenth avenue, he testified as follows:
“Well, there was through the block.there. I could not say exactly whether they were right near West Tenth avenue or not, but in the block generally, in many instances and in many places, but I would not generalize right at that point, because I do not remember.”
The testimony of the witness Clapp is a mass of general conclusions, too indefinite to aid the court or jury in any manner.
At the point in the street where the alleged accident occurred there were three depressions, according to the testimony of the plaintiff in error, and only two according to the testimony of Gfeorge E. Randolph, president of the Board of Public Works of the city, who made a special examination of the grounds soon after the accident. Plaintiff in error testified that he knew there was a hole in the street about three feet long, one and one-half feet wide and from five to eight inches deep, and, in trying to avoid this hole, he rode into a second hole about three feet to the west, and about two feet further south on the street, which was about eighteen-inches long, eight to ten inches wide and three or four inches deep; that the third hole was smaller than either of the other two, was only one or *410 two indies deep, and nearer the curb; that he did not know of the presence of the second hole, which, he contends, caused the accident, and that when the front wheel of his bicycle went into the hole, he was thrown off, and he and his bicycle fell sidewise. When asked how he was thrown off he said:
“By striking the hole I guess, I don’t know.”
He further testified that he never rode over the street again, and there is no evidence before ns that he ever saw it after the accident. Mr. Randolph, president of the Board of Public Works, secured from the plaintiff in error a description of the alleged defects where it was said the accident occurred, and officially visited and inspected the same, some time after the accident, and testified as follows:
“I looked around carefully to see what could be the basis of the claim, and the only things that I saw were two depressions, might be called depressions, one nearer the curb and one nearer the middle of the street. The first one perhaps three feet in diameter and the one in the middle of the street larger. I should think both of them possible three inches at the deepest, down below the ordinary surface of the street and running’ to nothing at the outer edge of each circle. * * * and from there I went back to Mr. Koch and asked again whether the condition of the street was the same now as it was then, and he said that it was; that it was in the same condition when I saw it as it was when the accident occurred.”
Plaintiff in error, in rebuttal, gave his version of his conversation with Randolph as follows:
“He says to me, ‘Is the street in the same condition now that it was then?’ I says, ‘No, I think that has been somewhat filled up now. Some sand Mowed in.’ ”
There seems to be no doubt that both parties to this action knew of the general condition of Sofith Tenth street at the time of the alleged accident, but neither *411 knew of the so-called hole or depression which is alleged to have caused the. accident. Koch testified that “It looked like it sunk in from the water pipes,” and was not present when he rode by the place that morning, but on cross-examination admitted that it might possibly have been there without his knowledge. He also testified that there was a city street light within 100 feet of the place of the accident, and frankly stated that he did not know whether the ground was hard or soft within the depression, though, he said, it was a cold night, and the ground was generally frozen hard, and guessed he was thrown off by his wheel striking the hole, but that he did not 'know. It is difficult to perceive how a depression such as was described by him or by the president of the Board of Public Works could be the proximate cause of the injury, riding, as he was, with his wheel properly lighted, at the rate of three miles an hour, which was his pace according to his testimony. It is a matter of common knowledge that a bicycle, being ridden at a pace of three miles an hour, is under the complete control of the rider, and can be stopped at will, or turned to one side or the other, and the rider step to the ground without danger of falling, and, as well, a matter of common knowledge that such a wheel should pass over a depression such as described without a material disturbance of the wheel or rider. •
The city is not required to maintain its streets in a perfect condition, but only in a reasonably safe condition for travel, and we do not find that the plaintiff in error has shown by a preponderance of the evidence, or at all, that South Tenth Street was, at or near the place described in the complaint, other than in a reasonably safe condition for travel at the time of the alleged accident. It is true that the plaintiff in error and his witness Clapp made general statements that the block in which this alleged accident occurred was full of holes, but Clapp *412 made no endeavor to describe any of them, neither did the plaintiff in error, except three in close proximity, one of which; he claimed, ranged from five'to eight inches in depth, over which he safely passed at other times, and on this occasion intentionally avoided, and rode into a smaller one from three to four inches deep, about eighteen inches long, and from eight to ten inches wide, and a third, still further to the west, which was but from one to two inches deep. Such depressions can hardly be avoided on dirt thoroughfares, and, as the same are described by the president of the Board of Public "Works can be duplicated in the streets surrounding the state house and throughout the city, over , which all kind of travel is daily passing with safety, and- we think the evidence thoroughly supports the verdict.
Counsel for plaintiff in error, however, contends that the trial court committed numerous errors, without which the jury might have rendered a different verdict.
Assignments 1, 2, 3 and 4 are directed against the alleged improper exclusion of testimony. After examining the record and these assignments, we do not think any reversible error was committed by the trial court in this respect.
The fifth assignment of error is based upon the ruling of the court in allowing the witness Randolph to testify that the plaintiff in error admitted to him that the street was in the same condition when the witness examined it as- it was at- the time of the accident. The reasons assigned by counsel for this alleged error are that the question was not proper re-direct examination, and was asked for the purpose of impeaching the plaintiff in error without laying the proper foundation, by establishing time, place, persons present, etc. The order of the examination was a matter within the discretion of the court, which we think was properly exercised, and the admissions sought to be elicited fell within the rule *413 of showing admissions of a party to the suit against his interests, and this, rather than for the purposes of impeachment, was the object of counsel, hence the ruling of the court was proper. — Jones on Evidence, 2nd Ed., sec. 851.
Assignments 6, 7, 8, 9 and 10 are based upon refusals of the court to give instructions tendered by the plaintiff in error, but, as we think the jury was properly instructed on the material questions involved, and believing that substantial justice has been done through the verdict of the jury, we do not feel justified in further extending this opinion on the assignments above mentioned.
Assignments 11,12 and 13 are directed to the alleged errors of the court in giving instructions to the jury. We think the instructions complained of fairly informed the jury of the law applicable to the facts presented in the record.
Assignment 12 is based upon the giving of Instruction Number 9 pertaining to contributory negligence. The objection made at the time was based upon the alleged absence of evidence to which the instruction could apply, and we should not reverse the judgment on any error not called to the attention of the trial court. The argument of counsel in this court, however, seems to be directed to their contention that the instruction recognizes degrees of negligence. It is true that there is no direct evidence that is made specifically applicable to contributory negligence, but the facts are stated attending the accident, and it then becomes a question for the jury under all the circumstances, to determine, first, whether the defendant in error was negligent, and secondly, if negligent, whether the negligence of the plaintiff in error contributed to the cause of the accident. We think, under the circumstances, that no injurious error resulted from the giving of this instruction. However, we think the phrase “in any degree” might well have *414 been omitted. It serves no good purpose, as the test is if the negligence of the plaintiff contributed to the injury he cannot recover. The instruction reads in part as .follows:
“If you find that the conduct of the plaintiff in any degree contributed to the accident, then the case is one of mutual fault, and the law will neither cast all the consequences upon the defendant, nor will it attempt any apportionment thereof, and in such case the plaintiff should not recover.”
Not only our courts, but. most of the courts of the country have discarded the doctrine of comparative negligence. However, the law writers and the courts very generally state the rule in substance as follows:
“That a plaintiff cannot recover for the negligence of the defendant, if his own want of care or negligence has in any degree contributed to the result complained of.” — Needham v. S. F. & S. J. R. Co., 37 Cal., 409-419, citing Gay v. Winter, 34 Cal., 153.
The text in Cyc. reads:
“The general rule is that if the negligence of the injured person contributed in any degree no recovery can be had. * * * The law will not attempt to measure the degree.” — 29 Cyc., 511; Chicago City Railway Co. v. Margaret Canevin, 72 Ill. App., 84; Mattimore v. Erie City, 144 Pa., 24, 22 Atl., 817; Gonzales v. New York & Harlem R. R. Co., 38 N. Y., 440, 98 Am. Dec., 58; Banning v. Chi. R. I. & P. Ry. Co., 89 Ia., 81, 156 N. W., 277; Murch v. Con. R. Co., 29 N. H., 9, 61 Am. Dec., 631; Potter v. Chi. & N. W. Ry. Co., 21 Wis., 372, 94 Am. Dec. 548; Birmingham Railway, Light & Power Co. v. Bynum, 139 Ala., 397, 36 So., 736.
Counsel cite many cases to the effect that comparative degrees of negligence submitted to a jury is injurious error. That is conceded by our own supreme court, and even the state of Illinois, where the supreme court unwit *415 tingly committed the error of recognizing comparative negligence, and persistently followed its ruling from the time of its decision in Galena & C. P. U. R. Co. v. Jacobs, 20 Ill., 478, wherein it departed from the current of authorities, including its own earlier decisions, up to the time of its decision in Calumet Iron & Steel Co. v. Martin, 115 Ill., 358, 3 N. E., 456, wherein it repudiated the rule announced in Galena & C. P. U. R. Co. v. Jacobs, supra, and the Illinois courts now hold the rule tó he:
“That there can be no recovery if plaintiff’s negligence contributed in any degree to the injury.” — Chicago City Railway Co. v. Margaret Canevin, 72 Ill. App., 84.
The rule in this state is substantially in harmony with that in the states above cited in support of the general rule. Our supreme court stated the rule as follows:
“Instruction Number 14 recognizes this qualification, and in the main states the rule correctly, but is erroneous in limiting its application to a case where the injured party was guilty of slight negligence only. As before said, the rule of comparative degrees of negligence does not prevail in this state, and it is immaterial what the extent of the injured party’s negligence may have been, if it contributed in any degree as the proximate cause of the injury, there can be no recovery.” — D. & R. G. R. R. Co. v. Spencer, 25 Colo., 9-12, 52 Pac., 211.
It will be noticed that the objection in the case above cited was to the court attempting to limit the negligence to “slight negligence only.”
In C. & S. Ry. Co. v. Webb, 36 Colo., 224-230, 85 Pac., 682, the supreme court upheld the refusal of a tendered instruction informing the jury that “unless the evidence showed that the defendant had been guilty of gross negligence, in no event could the plaintiff recover, ’ ’ because it said:
“Degrees of negligence, such as slight and gross, does not prevail in this jurisdiction. ’ ’
*416 In D. & R. G. R. R. Co. v. Maydole, 33 Colo., 150-152, 79 Pac., 1023, also cited by counsel for plaintiff in error, the condemned instruction reads:
“If * * * the deceased was also guilty of an equal or nearly equal degree of negligence * * then the jury should find for the defendant.”
The other authorities from this state cited by counsel involve the same question of comparative degrees of negligence, which, in our opinion, has no application to the case before us.
We feel that substantial justice was administered in the trial court without reversible error, hence the judgment should be and it is hereby affirmed.