## COLE v. STATE

[No. 72, October Term, 1956.]

*Decided January 15, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ.

*Barnard T. Welsh,* for appellant.

*Frank T. Gray, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General* and *Alger Y. Barbee, State's Attorney for Montgomery County,* on the brief, for appellee.

56

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment and sentence to death after the appellant, twenty-three years of age, had been found guilty by a three-judge court of the brutal rape of a four-year old girl. The appellant had pleaded not guilty by reason of insanity at the time of the commission of the crime, not guilty by reason of insanity at the time of the trial, and not guilty. The only question presented on this appeal is whether the court erred in refusing to admit certain evidence as to his mental condition at the time of the commission of the crime, proffered in the form of a stipulation.

According to this stipulation, the appellant admits "That the defendant, George Lightfoot Cole, Jr., can offer no evidence to overcome the presumption of sanity, and that at the time of the commission of the alleged offense he did have the capacity and reason sufficient to enable him to distinguish between right and wrong and understand the nature and consequences of his act as applied to himself." These admissions were supported by the experts whose evidence was proffered in the stipulation, as well as by psychiatrists whose evidence was presented by the State.

It was further agreed in the stipulation that a proffer of certain expert testimony and supporting evidence was denied by the court on the ground that it did not show legally recognized insanity of the accused. We are not called upon to decide whether the evidence would have been admissible if offered in support of a contention that the accused was legally insane. The concession that he was not makes the evidence proffered immaterial under the existing law, so far as guilt is concerned. The substance of the proffer was that before the appellant reached the age of sixteen, he showed signs of "abnormal distinctly neurotic" behavior and "sexual activities that almost though not quite went beyond the normal". At age sixteen, he was hospitalized in Minnesota for an illness eventually diagnosed as western equine encephalitis, an inflammation of the brain. He was a patient in George Washington University Hospital for about five weeks in 1950, to determine whether his "behavior is of a postencephalitic nature or merely a behavior problem." The final diagnosis

made there was that he was a "maladjusted adolescent". In 1951, while in the army, he was convicted by a court martial of offenses involving young females and served a sentence. He later served a sentence in the Maryland House of Correction for larceny.

On the basis of examinations of the appellant and consideration of other clinical material proffered, the opinion of various experts is included in the proffer to the effect that the appellant's ability to control pre-existing hostile, anti-social trends has been and is impaired, and "likely as a result of the acute Encephalitis suffered in 1948, he has been rendered far less able to exercise controls which previously he could". Some of the opinions were to the effect that, although the appellant knows and comprehends the difference between right and wrong, the present crime is a product of the disease, the residual effects of which still impair his powers of control. One of the doctors stated that his "neuroticisms * * * provided the framework on which the brain disease implanted itself. With the attack of Psychosis with Encephalitis Lethargica, the pre-existing personality was unable to maintain control or cope with pre-existing hostile, anti-social trends". These opinions seem to be based in large part, not on objective evidence of brain damage, but on the fact that "sex offenses are common among persons suffering from this type of illness". On the other hand, one of the doctors for the State maintained that the equine type of encephalitis, unlike the lethargic type, did not produce residual symptoms of a sexual or anti-social character, and "it would be difficult to relate this patient's character disorders closely to the organic illness". All of the experts seemed to agree that he was dangerous to society and should be institutionalized for an indeterminate period.

It may also be noted that the court indicated, at the time of sentence, that it had carefully studied the material in the proffer, although excluding it as bearing upon the question of legal sanity as a prerequisite to guilt. There was no disagreement between the experts on the question of legal sanity. The appellant asks us to re-examine and reject the rule of criminal responsibility first adopted in *Spencer v. State,* 69

Md. 28, and recently reaffirmed in *Thomas v. State,* 206 Md. 575 and *Bryant v. State,* 207 Md. 565. The rule as to capacity and reason to distinguish between right and wrong and to understand the nature and consequences of an act was, of course, first laid down in *M'Naghten's* case, 8 Eng. Rep. 718 (1843), and is still the prevailing rule in the great majority of the states, although repudiated in the District of Columbia in *Durham v. United States,* 214 F. 2d 862 and *Stewart v. United States,* 214 F. 2d 879.

It is important to note that the *M'Naghten* rule is based on the legal requirement of a criminal intent as a necessary element for the commission of crime. As early as *Beverley's* case, 4 Co. 123b, 76 Eng. Rep. 1118, 1121 (K. B. 1603) Coke declared that a person *non compos mentis* cannot have felonious intent. If an accused is "insane", the requisite criminal intent cannot be present. See *Hall, Mental Disease and Criminal Responsibility,* 45 Col. L. R. 677. The *M'Naghten* rule was designed to isolate those elements of insanity that bear upon the capacity to form criminal intent. It is not a defense that the accused is suffering from a mental disorder or weakness, if he is capable of a rational appraisal of the nature and consequences of his acts. The appellant does not ask us to abandon this basic concept, but he asks us to add a new element that would require a further finding that, although an accused is found to be a responsible agent, he should be relieved of responsibility in the interest of humanity "if it is further found that the unlawful act was a product of a mental disease or mental defect". But if a workable definition of some new element is to be evolved, we think that is a prerogative of the legislature and not of the courts.

Basic and far reaching questions of public policy are involved in any such steps. As is pointed out in an annotation in 45 *A. L. R.* 2d 1447, *et seq.,* any but the most superficial analysis of questions of criminal responsibility quickly encounter fundamental and perhaps insoluble questions of free will versus determinism. In the instant case, while it may be that the weakness of the appellant's control over his behavior was a product of disease and hence not "determined" by him, nevertheless the hostile, anti-social trends pre-dating

the disease, his intoxication prior to the crime, and other factors leading to it, were subject in some degree to his free will and he must be held responsible for them.

The appellant argues that the existing rule should be modified so as to permit the triers of fact to decide whether conviction would be "inhuman and contrary to civilized standards". The proposed test is even more vague than the doctrine of "irresistible impulse" adopted in some states but, even after the *Durham* decision, *supra,* rejected in others. See *Johnson v. State,* 76 So. 2d 841 (Miss.), cert. denied, 349 U. S. 946; *Thompson v. State,* 68 N. W. 2d 267 (Neb.); *Berryman v. State,* 283 P. 2d 558 (Okla.); *State v. Iverson,* 289 P. 2d 603 (Idaho). The doctrine of irresistible impulse was rejected here in *Spencer v. State, supra,* and in *Thomas v. State,* 206 Md. 575, 583, citing *State v. Garver,* 225 P. 2d 771 (Ore.). See also *Bryant v. State, supra,* .p. 593. A modification of the existing rule to relieve an accused of the criminal consequences of his acts, merely because of impaired ability to resist temptation, would, as we have pointed out, remove responsibility for a crime where there is some element of determinism in the case, and thus substitute treatment for punishment in virtually all criminal cases. It may be that we shall reach that point; a step has been made in that direction under the new law relating to defective delinquents, Code (1951), Art. 31B. ·Further changes must be left to the legislature.

*Judgment affirmed, with costs.*

BRUNE, C. J., concurs in the result.